UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ARDIS HEALTH, LLC, CURB YOUR CRAVINGS,
LLC, and USA HERBALS, LLC,

                      Plaintiff,

      - against -

ASHLEIGH NANKIVELL,

                  Defendant.
----------------------------------------X

**MEMORANDUM AND ORDER**

11 Civ. 5013 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiffs Ardis Health, LLC ("Ardis"), Curb Your Cravings, LLC ("CYC"), and USA Herbals, LLC ("USA Herbals") have moved for a preliminary injunction against defendant Ashleigh Nankivell requiring her to (i) return plaintiffs' login information for various websites, (ii) return a laptop allegedly owned by plaintiffs and the content thereon, and (iii) refrain from using any and all of plaintiffs' proprietary content and trademarked or copyrighted works.[1] For the reasons stated below, plaintiffs' motion is granted in part and denied in part.

---

[1] The original motion for a preliminary injunction also requested the return of other equipment, including a video camera. Plaintiffs have since located that equipment and have withdrawn that part of the motion.

## BACKGROUND[2]

Plaintiffs are a group of closely affiliated online marketing companies that develop and market a variety of herbal and beauty products. They are wholly owned and collaboratively operated by their founder Jordan Finger.

In October 2008, defendant was hired as Video and Social Media Producer by CYC, the main online entity in Finger's enterprise. Defendant was at various points paid by both CYC and USA Herbals or USA Herbals alone and performed work for a number of entities in Finger's enterprise, including each of the plaintiffs. Defendant's duties included producing videos and maintaining websites, blogs, and social media pages in connection with the online marketing of plaintiffs' products. Her responsibilities with respect to plaintiffs' online presence included maintaining passwords and other login information for websites, email accounts, and social media accounts, as well as for third-party servers where plaintiffs stored content (collectively, "Access Information").

At the start of her employment, defendant signed an agreement governing the creation of work product (the "Work Product Agreement") with CYC. That agreement provides that all

---

[2] These facts are drawn from Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Injunction and the declaration and exhibits thereto, Defendant's Memorandum of Law in Opposition and the declarations and exhibits thereto, and Plaintiffs' Reply Memorandum of Law and the declaration and exhibits thereto.

work created or developed by defendant "shall be the sole and exclusive property of CYC, in whatever stage of development or completion," and that it "will be prepared as 'work-for-hire' within the meaning of the Copyright Act of 1976." (Decl. of Jordan Finger ("Finger Decl."), Ex. E, at ¶ 10.) The agreement also provides that defendant must return all confidential information to CYC upon request, and that "actual or threatened breach of [the agreement] will cause CYC irreparable injury and damage." (Id. at ¶¶ 5, 8.)

Plaintiffs provided defendant with equipment to perform her job functions, though she also used her own computer and video equipment on occasion. Defendant's personal computer crashed in the spring of 2010, purportedly due to over-use from work-related tasks, and plaintiffs provided her with a used laptop as a replacement. Defendant stored much of the work she created on this equipment.

In or about June 2010, Finger and defendant began to develop a service known as "Whatsinurs," a social media website for cosmetic products. Defendant produced both alpha and beta versions of a website for the service, and Ardis applied for a trademark in the name on April 6, 2011 and registered a copyright for the website on July 27, 2011. On June 6, 2011, Finger sent defendant an agreement pertaining to the organization and governance of Whatsinurs (the "Founders

Agreement"). The agreement lists defendant as one of three "founding shareholders" and provides for her to acquire 5% of the outstanding founding shares and operating shares. (Decl. of Gail I. Auster, Ex. 1, at ¶¶ B, C.) Finger and Karl Alomar, the third founder, were to be the only two members of the organization's board of directors. The Founders Agreement was never signed.

Defendant, meanwhile, had begun seeking alternative employment in the spring of 2011. Plaintiffs allege that defendant's work suffered as a result of her job search, while defendant asserts that Finger simply became enraged upon learning of defendant's ambulatory intentions. Regardless of the motivation, defendant was fired on June 23, 2011.

Upon defendant's termination, Finger requested the return of the laptop plaintiffs had provided to her, as well as the Access Information. Defendant, however, declined to return the computer and information. Plaintiffs are now unable to access a number of their online accounts and websites to update them as needed for their marketing purposes. Plaintiffs also allege that the laptop contains proprietary information that is otherwise unavailable to them, though defendant maintains that the laptop was synced with the desktop she used at work, so all of the work files on the laptop are within plaintiffs' control.

Additionally, at some point prior to her termination, defendant began displaying content from the Whatsinurs website, alongside other projects she was involved with, on her personal websites as part of her design portfolio. Defendant uses these websites as a means of self-promotion to find future work. Internet searches for the term "Whatsinurs" will return these websites alongside the official Whatsinurs website and certain of its social media pages.

## DISCUSSION

### I.  Legal Standard

A party seeking a preliminary injunction must show (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. Monserrate v. N.Y. State Senate, 599 F.3d 148, 154 (2d Cir. 2010). The injury underlying an injunction "must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).

A preliminary injunction is an "extraordinary remedy that should not be routinely granted." Procter & Gamble Co. v.

<u>Ultreo, Inc.</u>, 574 F. Supp. 2d 339, 344 (S.D.N.Y. 2008) (internal quotation marks omitted). Indeed, when the movant seeks a mandatory injunction -- one that will alter the status quo -- it must show a "clear" or "substantial" likelihood of success on the merits. <u>See</u> <u>Mastrovincenzo v. City of New York</u>, 435 F.3d 78, 89-90 (2d Cir. 2001); <u>Jolly v. Coughlin</u>, 76 F.3d 438, 473 (2d Cir. 1996).

## II. Plaintiffs' Entitlement to Injunctive Relief

### A. Plaintiffs Are Entitled to Recover the Access Information

Plaintiff has provided the Court with sufficient evidence to support a finding of irreparable harm if the Access Information is not returned prior to a final disposition in this case. Plaintiffs depend heavily on their online presence to advertise their businesses, which requires the ability to continuously update their profiles and pages and react to online trends. The inability to do so unquestionably has a negative effect on plaintiffs' reputation and ability to remain competitive, and the magnitude of that effect is difficult, if not impossible, to quantify in monetary terms. Such injury constitutes irreparable harm. <u>See</u> <u>Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.</u>, 60 F.3d 27, 38 (2d Cir. 1995) (discussing the principle that irreparable harm lies "where there is a threatened imminent loss that will be very difficult to quantify

at trial"); <u>N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.</u>, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) (finding "[p]rospective loss of . . . goodwill alone" to be "sufficient to support a finding of irreparable harm" and noting plaintiff's loss of "the ability to control its reputation").

Defendant asserts that plaintiffs will not be irreparably harmed if they do not receive the Access Information because the websites and blogs to which the information pertains had not been used for the two years preceding defendant's termination. Defendant was employed by plaintiffs for the entirety of that period, and she acknowledges that it was her responsibility to post content to those websites. Defendant cannot use her own failure to perform her duties as a defense. Moreover, past failure to utilize the websites does not preclude a finding of irreparable harm. New opportunities may arise that plaintiffs are unable to take advantage of as a result of defendant's withholding the Access Information. For instance, plaintiffs have recently begun participating in "daily deal" promotions, the success of which depends heavily on tie-ins with social media.

It is uncontested that plaintiffs own the rights to the Access Information. Defendant's unauthorized retention of the information may therefore form the basis of a claim of conversion. See <u>Thyroff v. Nationwide Mut. Ins. Co.</u>, 460 F.3d

400, 403-04 (2d Cir. 2006) ("According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'"). The likelihood of plaintiffs' success on the merits of this claim is unquestioned, and plaintiffs have clearly established their right to injunctive relief. Defendant must provide them with the requested Access Information.

**B.  Plaintiffs Are Not Entitled to the Return of the Laptop Computer at This Time**

Plaintiffs have not demonstrated irreparable harm if the laptop computer is not returned to them. Plaintiffs have made no arguments whatsoever with respect to the computer itself; as a mass-produced object, its loss is clearly monetarily compensable.

Plaintiffs have, however, made some attempt to demonstrate that they will suffer irreparable harm if the contents of the computer are not made available to them. They point, specifically, to the clause of the Work Product Agreement wherein defendant expressly acknowledged that "the actual or threatened breach of this Agreement will cause CYC irreparable injury and damage," which should entitle CYC "to injunctive and other equitable relief." (Finger Decl., Ex. E, at ¶ 8.) Because that agreement also provides that defendant must, upon CYC's

request, "take all action necessary to immediately return to CYC all of the Confidential Information without retaining any copies thereof," plaintiffs contend that defendant's failure to return the information contained on the computer constitutes irreparable injury.

A conclusory contract provision alone cannot establish irreparable harm. The provision "might arguably be viewed as an admission by [defendant] that plaintiff will suffer irreparable harm were [defendant] to breach" the contract, Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999), but "contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate." Baker's Aid v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987). Rather, the Court must perform a standard inquiry into the existence of irreparable injury and simply use the contractual provision as one factor in its assessment. See, e.g., Life Techs. Corp. v. AB Sciex PTE, Ltd., No. 11 Civ. 325, 2011 U.S. Dist. LEXIS 40586, at *13-14 (S.D.N.Y. Apr. 11, 2011) (considering contractual language as a non-dispositive part of its irreparable harm analysis); Int'l Creative Mgmt., Inc. v. Abate, No. 07 Civ. 1979 (PKL), 2007 U.S. Dist. LEXIS 22964, at *19 (S.D.N.Y. Mar. 28, 2007) (same); Markovits v. Venture Info Capital, Inc., 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001) (same).

Defendant contends that all of the laptop's contents have been synced with a desktop computer within plaintiffs' control. Although plaintiffs argue that without access to the laptop they cannot be certain that all, rather than just some, of the contents were synced, they have not demonstrated irreparable injury in the event that there is a discrepancy. Indeed, they have done no more here than rely on the language contained in the Work Product Agreement and have therefore not met their burden with respect to irreparable injury. The requested injunction is not appropriate.[3]

## C. Plaintiffs Are Not Entitled to Enjoin Defendant from Displaying Whatsinurs Content on Her Website

Plaintiffs' arguments to the contrary notwithstanding, irreparable harm may not be presumed in matters of copyright and trademark infringement. See Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) ("The court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm [in copyright cases] . . . . Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits . . . ."); Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d 395, 402 (S.D.N.Y. 2011) (applying Salinger to a trademark claim).

---

[3] Because the issue is resolvable at the irreparable harm step of the inquiry, the Court does not opine on plaintiffs' likelihood of success on the merits.

Plaintiffs have presented little evidence in support of their claim of irreparable injury as a result of defendant displaying selected Whatsinurs content, in a non-functional manner, on her personal websites. Essentially, plaintiffs assert that, because a web search for "Whatsinurs" includes defendant's websites in the results (though they appear below the actual Whatsinurs website and its manifestations on social media sites), consumers may become confused as to the true Whatsinurs website and the Whatsinurs brand will become diluted.

The claim is preposterous on its face. Not only do defendant's websites appear below plaintiffs' in search results, defendant's do not purport to be, or in any way give the impression of being, portals for the sale of commercial goods. On both of defendant's websites, the Whatsinurs content is wholly non-functional, little more than dressed-up image captures. It is clearly labeled as an example of defendant's "Design" capabilities and surrounded by content from other projects defendant has worked on. It does not compete with plaintiffs' websites or pose potential issues of confusion.

Nevertheless, plaintiffs argue that because defendant is displaying their marks, bad faith may be presumed, see Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 357 (S.D.N.Y. 1998), and bad faith establishes a presumption of confusion, see GoSmile, Inc. v. Levine, 769 F. Supp. 2d 630, 645 (S.D.N.Y.

2011). Bad faith, however, is not appropriately presumed here because defendant has "a credible innocent explanation," <u>Tri-Star Pictures</u>, 14 F. Supp. 2d at 357, namely that displaying prior projects is industry standard for web designers in garnering new clientele.

Even assuming that potential customers would likely be confused between defendant's and plaintiffs' websites, "a likelihood of confusion does not create a presumption of irreparable injury." <u>Marks Org., Inc. v. Joles</u>, No. 09 Civ. 10629, 2011 U.S. Dist. LEXIS 28182, at *27 (S.D.N.Y. Mar. 16, 2011). Plaintiffs have done little more than assert that confusion itself will irreparably injure them; such conclusory assertions are insufficient to carry their burden. While defendant need not remove the references to Whatsinurs or the samples of her work on Whatsinurs from her websites at this time, defendant is directed to remove the following language from her resume on her websites: "Currently updating alpha version. http://whatsinurs.com."

## CONCLUSION

For the foregoing reasons, the motion (docket no. 6) is granted in part and denied in part.


Dated:     New York, New York
           October 19, 2011


NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE



Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
David Valicenti, Esq.
Christopher Hennessey, Esq.
Cohen Kinne Valicenti & Cook LLP
28 North Street, 3rd Floor
Pittsfield, MA 01201

**Attorney for Defendant**
Gail I. Auster, Esq.
Gail I. Auster & Associates, P.C.
17 Battery Place, Suite 711
New York, NY 10004